ALICIA A.G. LIMTIACO
United States Attorney
ROSS K. NAUGHTON
Assistant United States Attorney
P.O. Box 500377
Horiguchi Building, Third Floor
Saipan, MP 96950
TEL: (670) 236-2980
FAX: (670) 236-2985

Attorneys for the United States of America

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN MARIANA ISLANDS**

| | |
|---|---|
| **UNITED STATES OF AMERICA**,<br><br>Plaintiff,<br><br>vs.<br><br>**XIAOYING TANG**,<br><br>Defendant. | Case 1:13-cr-00014-001<br><br>**UNITED STATES' OPPOSITION TO DEFENDANT TANG'S MOTION TO DISMISS**<br><br>Set for: Jan. 7, 2014 — 9:00 AM<br>Judge: Hon. Ramona V. Manglona |

Before the Court is Defendant Tang's motion to dismiss the indictment. *See* ECF No. 21 ("the Motion"). As explained below, the Court should deny the Motion.

## I. VENUE

Defendant starts by arguing that the indictment must be dismissed because the judge of this Court doesn't enjoy the protections of Article III. *See* Motion at 1:19-3:4. Besides having a curious air of paradox[1] about it, this argument is a legal non-starter. *See United States v. Wei Qin Sun*, 399 Fed. Appx. 319, 320 (9th Cir. 2010) (rejecting precisely this argument), *cert. denied*, 565 U.S. ___, 132 S. Ct. 451 (2011).[2] It can therefore be safely and summarily rejected.

[1] The argument restated: this Court *can't* exercise the judicial power of the United States (because it's improperly constituted); therefore it *must* exercise the judicial power of the United States (by dismissing the indictment).

[2] *See also* Corrected Brief of Defendant-Appellant, United States v. Wei Qin Sun, 399 Fed. Appx. 319 (9th Cir. Feb. 3, 2010) (No. 08-10114), 2010 WL 1178076 (formulating the argument at greater length); Brief for the United

## II. CHARGES

Next, Defendant contends that *United States v. Windsor* somehow overruled *Lutwak v. United States*, which somehow requires dismissal of the entire indictment. *See* Motion at 3:6-6:15 (citing, *inter alia*, *United States v. Windsor*, 570 U.S. ___, 133 S. Ct. 2675 (2013); *Lutwak v. United States*, 344 U.S. 604 (1953)).

It's tempting to answer; the United States can readily imagine the four points it would open with.

First, in *Windsor* the Supreme Court itself made clear that it saw the immigration-related inquiry into the purposes of a marriage as permissible. *See Windsor*, 133 S. Ct. at 2690. While Defendant thinks the Supreme Court was mistaken about how it saw things, or about how it should have seen things (*see* Motion at 6 n.13), the Supreme Court isn't usually thought to have inadvertently overruled an earlier case despite its own explicit attempts to make clear that it saw the rule of the earlier case as consistent with what it was doing on the day of the subsequent case.

Second, no court appears to have taken Defendant's position.[3] Instead, and oddly enough, the courts persist in relying on *Lutwak* in marriage fraud cases. *See, e.g.*, *Zemeka v. Holder*, ___ F. Supp. 2d ___, 2013 WL 6085633, at *4-7 (D.D.C. Nov. 20, 2013) (relying on *Lutwak*, post-*Windsor*, to affirm BIA's decision affirming denial of I-130 petition because there was substantial evidence of marriage fraud).

---

States as Appellee, *Wei Qin Sun*, 399 Fed. Appx. 319 (9th Cir. Mar. 8, 2010) (No. 08-10114), 2010 WL 2624996; Reply Brief of Appellant, *Wei Qin Sun*, 399 Fed. Appx. 319 (9th Cir. Mar. 22, 2010) (No. 08-10114), 2010 WL 2624997; Order Finding Case Suitable for Decision without Oral Argument, *Wei Qin Sun*, 399 Fed. Appx. 319 (9th Cir. Sep. 22, 2010) (No. 08-10114), ECF No. 52 (attached as Exhibit 1); Defendant-Appellant's Petition for Rehearing *En Banc*, *Wei Qin Sun*, 399 Fed. Appx. 319 (9th Cir. Oct 28, 2010) (No. 08-10114), ECF No. 57-1 (attached as Exhibit 2); Order Denying Petition for Rehearing *En Banc*, *Wei Qin Sun*, 399 Fed. Appx. 319 (9th Cir. Nov. 23, 2010) (No. 08-10114), ECF No. 58 (attached as Exhibit 3); Brief for the United States in Opposition to Petition for Writ of Certiorari, *Wei Qin Sun v. United States*, 132 S. Ct. 451, (Jun. 24, 2011) (No. 10-9333), 2011 WL 2680517, *also available at* http://www.justice.gov/crt/about/app/briefs/sunoppcert.pdf.

[3] In fact, so far as the United States can tell from a Westlaw search of trial court filings citing *Windsor*, no litigant anywhere has taken Defendant's position.

Third, in order for *Windsor* to have the effects Defendant ascribes to it, the Supreme Court would have had to at least limit or disapprove of (if not outright overrule) a number of its other cases that concern the government's (considerable) power to exclude aliens. *See, e.g.*, *Mathews v. Diaz*, 426 U.S. 67, 79-80 (1976) ("In the exercise of its broad power of naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens. The exclusion of aliens and the reservation of the power to deport have no permissible counterpart in the Federal Government's power to regulate the conduct of its own citizenry. The fact that an Act of Congress treats aliens differently from citizens does not in itself imply that such disparate treatment is 'invidious.'"); *Kleindienst v. Mandel*, 408 U.S. 753, 766 (1972) ("Over no conceivable subject is the legislative power of Congress more complete than it is over the admission of aliens.") (quotation marks and emendation omitted).[4]

And fourth, *Windsor* couldn't overrule *Lutwak* anyway, because the two cases took up utterly distinct issues. "For a marriage to confer immigration benefits, it must satisfy three criteria," to include having (1) legal validity and (2) a grounding in "a *bona fide* desire to establish a life together." *Agyeman v. INS*, 296 F.3d 871, 879 n.2 (9th Cir. 2002). To perhaps oversimplify things: in the immigration context, *Lutwak* concerns the second factor, while *Windsor* concerns the first. *Windsor* doesn't mean that all legally valid marriages are deemed *bona fide*; rather, it means that certain marriages previously deemed *per se* invalid for immigration purposes—namely, same-sex marriages[5]—can now be legally valid in the view of federal law, and so, for the first time, can be open to the more substantive inquiry into whether they are also grounded in a *bona fide* desire to live a life together.

[4] As to whether the Supreme Court in fact did this, see the above points.

[5] *See, e.g.*, *Adams v. Howerton*, 673 F.2d 1036, 1040 (9th Cir. 1982); *Lui v. Holder*, Case No. 2:11-cv-01267, 2011 WL 10653943, at *2-3 (C.D. Cal. Sep. 28, 2011).

Notably, this is exactly what the commentators predicted, and it's exactly what happened. *Compare* Benjamin P. Edwards, *Welcoming a Post-DOMA World: Same-sex Spousal Petitions and Other Post-*Windsor *Immigration Implications*, 47 Fam. L.Q. 173, 182 (2013) ("Now that the Department of Homeland Security has announced its intention to treat same-sex spouses as opposite-sex spouses, they may look forward to navigating the same regulatory maze as opposite-sex couples.") *with Matter of Zeleniak*, 26 I. & N. Dec. 158, 159-60 (B.I.A. 2013) ("The Supreme Court's ruling in *Windsor* has therefore removed section 3 of the DOMA as an impediment to the recognition of lawful same-sex marriages. . . . The Director has already determined that the petitioner's February 24, 2010, marriage is valid under the laws of Vermont, where the marriage was celebrated. *Thus, the sole remaining inquiry is whether the petitioner has established that his marriage to the beneficiary is* bona fide. We will remand the record to allow the Director to make that determination.") (citations omitted; emphasis added).

Ultimately, though, the United States won't get drawn in to a debate on this inane contention—there's a shortcut to rejecting it.

Inferior courts "are bound to follow a controlling Supreme Court precedent until it is *explicitly* overruled by that Court." *United States v. Weiland*, 420 F.3d 1062, 1079 n.16 (9th Cir. 2005) (emphasis added). Defendant surely has to concede that *Windsor* didn't "explicitly" overrule *Lutwak*—after all, the text of the opinion in *Windsor* doesn't even contain the name "Lutwak." *See Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 18 (2000) ("This Court does not normally overturn, or so dramatically limit, earlier authority *sub silentio*."); *San Remo Hotel, LP v. San Francisco City and County*, 364 F.3d 1088, 1095 n.2 (9th Cir. 2004) ("*College of Surgeons*, however, does not even cite *Williamson County*, much less overrule it.").

We can stop there. "If a precedent of [the Supreme] Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the [lower courts] should follow the case which directly controls, leaving to [the Supreme] Court the prerogative of overruling its own decisions." *Rodriguez de Quijas v. Shearson/Am. Express, Inc*., 490 U.S. 477, 484 (1989). *See also Hohn v. United States*, 524 U.S. 236, 252-53 (1998) ("Our decisions remain binding precedent until we see fit to reconsider them, regardless of whether subsequent cases have raised doubts about their continuing vitality."); *State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997) ("The Court of Appeals was correct in applying that principle despite disagreement with *Albrecht*, for it is this Court's prerogative alone to overrule one of its precedents."); *United States v. Osife*, 398 F.3d 1143, 1148 (9th Cir. 2005) ("As the Supreme Court has explained, when there is clearly controlling precedent, circuit courts are not to anticipate the direction in which the Court's jurisprudence is moving[.]"); *United States v. Pacheco-Zepeda*, 234 F.3d 411, 414 (9th Cir. 2000) ("[S]peculation does not permit us to ignore controlling Supreme Court authority.").

* * *

For the foregoing reasons, the Court should deny the Motion.

Respectfully submitted on December 26, 2013.

ALICIA A.G. LIMTIACO
United States Attorney

By: *__/s/ Ross K. Naughton_____________*
ROSS K. NAUGHTON
Assistant United States Attorney